O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORI JEAN KLEES, | ) | Case No. CV 15-00992 DDP (AJWx) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| | ) | |
| v. | ) | |
| | ) | [Dkt. No. 15] |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Presently before the Court is Defendant's motion to dismiss the complaint as to both counts. (Dkt. No. 15.) Having heard oral arguments and considered the parties' submissions, the Court adopts the following order.

///

///

///

**I.    BACKGROUND**

Plaintiff is a former employee of the University of California (UC) system who alleges that she was provided disability insurance coverage by Defendant pursuant to an agreement with the university. (First Amended Complaint ("FAC"), ¶ 6.)  Plaintiff alleges that she suffered "sickness and injury" "on or before January 1, 2012." (Id. at ¶ 8.)  She alleges that her conditions included seronegative inflammatory arthritis, fibromyalgia, and injuries from a car accident, and that these constitute a "loss compensable under the terms of the Policy." (Id.)  She further alleges that she had performed all obligations on her part, including paying premiums, that she submitted a timely long term disability claim to Defendant, and that Defendant initially approved the claim. (Id. at ¶¶ 7, 9.)

Plaintiff alleges she was examined, at Defendant's request, by a Dr. Vlachos on May 8, 2014, and that Dr. Vlachos' report indicated that she could not work full time due to side effects of medication related to her fibromyalgia, but that she might be able to work "24 hours per week." (Id. at ¶ 12.)  Defendant then had a Dr. Dennis, a separate medical reviewer, consult with Plaintiff's treating physicians, Drs. Ben-Artzi and Hui, who allegedly told Dennis that Plaintiff "might be capable of 'light duty work.'" (Id. at ¶¶ 14-15.)  Dennis allegedly wrote a report in which she stated that Plaintiff could work full time, but did not opine on whether Plaintiff "was capable of returning to her occupation or any occupation for which she was suited by her education, training, and experience." (Id. at ¶ 16.)

2

1   Defendant's vocational department then conducted a
2   "Transferable Skills Analysis" and concluded that Plaintiff could
3   perform several alternative occupations at a "'light' exertional
4   level as defined by Social Security Regulations." (Id. at ¶¶ 17-
5   18.) On August 11, 2014, Defendant terminated benefit payments,
6   based on a determination that "Plaintiff's disability did not
7   render her unable to perform 'any occupation' for which she was
8   qualified by reason of her age, experience, [and] training." (Id.
9   at ¶ 20.)
10   Plaintiff appealed the decision, allegedly providing evidence
11   that she suffered pain; swelling; fatigue and a sleep disorder;
12   difficulty sitting, handling stressful situations, and performing
13   repetitive hand movements; and that she still required medication.
14   (Id. at ¶ 21.) Plaintiff's appeal was denied. (Id. at ¶¶ 21-22.)
15   Thereafter she filed this suit alleged breach of contract and
16   breach of the covenant of good faith and fair dealing.

**II.  LEGAL STANDARD**

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in

3

the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

**III. DISCUSSION**

**A. Defendant's Request that the Court Consider Certain Documents Under the Incorporation by Reference Doctrine**

Defendant asks the Court to consider certain documents allegedly related to the insurance policy and the decision to terminate benefits. (Decl. Paula McGee & Exs.) Plaintiff does not dispute the authenticity of these documents but argues that the Court should not consider most of them, as they are not attached to the complaint and do not fall within any relevant exception. (Pl.'s Obj. McGee Decl.)

Generally, on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). However, under the "incorporation by reference" doctrine, a court may consider documents "whose contents are alleged in a complaint" or that "plaintiff's claim depends on," as long as the authenticity of the document is not disputed. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The "depends on" language is also sometimes phrased as "central to," (id. (quoting Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir.2002)), "crucial to," Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), "integral to," id. at 706, n.4, or "the basis of" the complaint. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). By contrast, where the documents are not cited or referred to in the complaint, are not "integral to" the complaint, and serve only as evidence intended to undermine the factual basis of plaintiff's

4

claims, consideration under the incorporation by reference doctrine is inappropriate. In re Jiffy Lube Int'l, Inc., Text Spam Litig., 847 F. Supp. 2d 1253, 1259 (S.D. Cal. 2012).

After reviewing the claims in the complaint, the Court concludes that it is appropriate to consider the following exhibits to the McGee declaration: Exhibit A, the insurance policy; Exhibit C, a July 29, 2011 letter approving short term total disability benefits; Exhibit D, a June 29, 2012 letter approving long term total disability benefits; Exhibit J, the August 11, 2014 letter terminating payment of benefits; and Exhibit K, the February 5, 2015, letter denying Plaintiff's appeal of the termination. Each of these is explicitly or implicitly referenced in the complaint, and Plaintiff's complaint depends on, at a minimum, the existence of a contract and the termination of benefits that are alleged to be owed under the contract. It is therefore appropriate to consider these documents along with the complaint in the motion to dismiss.

Many of the documents, however, are statements by doctors as to Plaintiff's ability to work, or communications between Defendant's agent and certain examining doctors. There are good reasons not to consider these. Plaintiff refers to some, but not all, of the documents in her complaint. However, Plaintiff's complaint does not depend for its validity on the medical opinion of any particular doctor (even her own); nor does it even depend on the conclusions drawn by Dr. Dennis or Defendant's vocational department. Although all those opinions and conclusions may (or may not) be relevant evidence at trial, to help the finder of fact determine whether Plaintiff had a disability within the meaning of

the insurance policy, they are not appropriate for the Court to consider on a motion to dismiss. There are credibility issues implicated in relying on such documents that likely require them to be submitted to a fact-finder's judgment after appropriate evidentiary rulings and cross-examination.[1]

Exhibit B, a "University Statement" showing Plaintiff's employment status and last day of work, may be helpful in establishing the timeline of events, but it also does not form the basis of Plaintiff's complaint. The document allegedly records facts about her employment history, but it performs no legal function in Plaintiff's complaint.

The exhibits other than A, C, D, J, and K therefore form no part of the basis for the Court's decision.

The Court also does not consider the statements of Ms. McGee in her declaration, except to the extent that they authenticate the documents on which the Court relies. Plaintiff's complaint cannot possibly depend on Ms. McGee's statements, which were made after the complaint was written.

**B.   Breach of Contract**

To state a claim for breach of contract under California law, a plaintiff must allege "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the

---

[1] The Court will not, for example, impute to the *complaint* statements of medical opinion allegedly given over the telephone by a physician (who may not have used words in their technical legal sense), and later memorialized in a letter drafted by Defendant's agent, whether the authenticity of the letter is called into question or not. (*E.g.*, Ex. G.)

6

breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

Defendant argues that Plaintiff has not adequately pled the terms of the contract. However, as Defendant has itself provided a copy of the contract, which Plaintiff does not dispute the authenticity of, the Court finds the existence of the contract, and the nature of its terms, to be adequately pled. (McGee Decl., Ex. A.)

Defendant does not dispute that Plaintiff adequately alleges her own performance under the contract, nor that, if the contract was breached, loss of benefits would supply the necessary damages. Thus, the key question is what Defendant's duties were under the contract, and whether Plaintiff properly alleges breach.

The insurance policy appears to provide for at least three different kinds of coverage: partial disability coverage; "short term" total disability coverage; and "long term" total disability coverage. (McGee Decl., Ex. A at P00022-33, P00045-46.) Plaintiff alleges Defendant wrongfully denied coverage under the total disability provisions.

The key term of those provisions, "total disability," is defined in two different ways, depending on the length of the disability:

> "Total Disability" or "Totally Disabled" with respect to Short Term Disability coverage means the Covered Person will be considered Totally Disabled when Liberty determines that . . .
> 1. Due to a medically determinable physical impairment or mental impairment resulting from a bodily injury or disease,

7

> the Covered Person is completely unable to perform any and every duty pertaining to his/her own occupation . . . .
>
> "Total Disability" or "Totally Disabled" with respect to Long Term Disability Coverage means the Covered Person will be considered Totally Disabled when . . .
> <u>From the 13th month of benefits onward</u>:
> 1. Due to a medically determinable physical impairment or mental impairment resulting from a bodily injury or disease, the Covered Person is completely unable to perform the material and substantial duties of <u>any occupation</u> for which he/she is reasonably fitted by education, training or experience . . . .

(McGee Decl., Ex. A at P00018 (emphases in original).)

Thus, the terms of the contract allow that a covered person may receive benefits for 12 months ("short term" benefits) based on inability to perform the duties of her own occupation. Plaintiff alleges that she "in a timely fashion . . . submitted a long term disability claim to Liberty Life." (FAC, ¶ 9.) She does not provide specific dates. Nonetheless, the documents submitted by Defendant appear to show that Defendant provided short term total disability benefits for exactly 12 months (June 2011 to June 2012), approved long term total disability benefits in June 2012, and then terminated benefits in August 2014. (McGee Decl., Exs. C, D, J.) Taken as part of the pleading, these documents show that short-term total disability payments were made in conformity with the provisions of the contract; therefore, the only remaining question

is whether there has been a breach of the long-term total disability provisions.

Those provisions state that the insured may only receive benefits after the short-term benefit expires based on an inability to perform the duties of "any occupation for which he/she is reasonably fitted by education, training or experience." What that phrase means is the crux of this motion.

The "definitions" section of the policy does not define "occupation," "education," "training," or "experience." Therefore, in keeping with general principles of California contract law, the Court interprets contract terms to "their ordinary and popular sense, unless . . . a special meaning is given to them by usage." George v. Auto. Club of S. California, 201 Cal. App. 4th 1112, 1120 (2011) (internal quotation marks omitted). Additionally, the Court notes that "[t]he meaning of particular words or groups of words varies with the verbal context and surrounding circumstances." Id. at 1121 (internal quotation marks and ellipses omitted).

The phrase "any occupation" in a disability policy of this kind has been given a special meaning by California cases – especially Erreca v. W. States Life Ins. Co., which both parties cite.[2]  19 Cal. 2d 388 (1942). In that case, the insured, a farmer, was thrown from a horse and seriously injured; even after being released from the hospital, he was unable to walk for any extended period and suffered "shortness of breath and quick heart action." Id. at 390. In his occupation as a farmer, he

---

[2] Indeed, "California law *requires* courts to deviate from the explicit policy definition" of "any occupation" to the degree that it conflicts with the definition given in Erreca. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1006 (9th Cir. 2004).

9

"personally managed and supervised the farm work" and was "compelled to engage in activities requiring physical exertion," including outright manual labor. Id. at 391-92. After the accident, he turned day-to-day management of the operation over to his son, although he still participated in the negotiation of leases and loans and other such non-physical business activities. Id. at 392-93.

The Erreca court distinguished between "occupational" disability policies, which insure against the loss of the ability to engage in a specific occupation, and "general" disability policies, which insure "against" total and permanent disability which prevents the insured from performing the work of any occupation." Id. at 393. The policy in the present case, then, functions as an occupational policy as to short-term total disability – referring to the insured's "own occupation" – but converts to a general policy for disabilities lasting longer than 12 months.

However, the primary teaching of Erreca is that even a general disability policy must take into account the individual's personal circumstances in determining his ability to work in "any occupation":

> The authorities supporting this rule define total disability which prevents the insured from engaging in any occupation or performing any work for compensation as a disability which prevents his working *with reasonable continuity* in *his customary occupation* or in *any other occupation* in which he might reasonably be expected to engage *in view of his station and physical and mental capacity*.

10

> This construction of the words 'any occupation' is based upon the theory that it is unreasonable to deprive an uneducated laborer, disabled from performing any manual work, of the benefits of his policy, because he might, notwithstanding those disabilities, with training and study, pursue a profession at some future date, or become an accountant or a banker. And it would be equally unreasonable to hold that a doctor, lawyer, or business executive is not totally disabled from engaging in 'any occupation' or from performing 'any work' because he is able to run a news stand or work as a day laborer.

Id. at 394-95 (emphases added) (internal quotation marks and citations omitted).  See also Moore v. American United Life Ins. Co., 150 Cal.App.3d 610, 630 (1984)(employee is not totally disabled if he can work "with reasonable continuity in his customary occupation or in any other occupation *in which he might reasonably be expected to engage*.") (emphasis added).

It should be noted that Erreca does not create a bright line rule as to whether an insured person may receive benefits under a general total disability policy if he can work or has worked part-time.  But the requirement of "reasonable continuity" means that the ability to work occasionally or intermittently, but not regularly, does not preclude a finding of total disability. Erreca, 19 Cal. 2d at 396-99 (holding that "[r]ecovery is not precluded under a total disability provision because the insured is able to perform sporadic tasks" and citing cases in which sporadic employability did not preclude total disability); Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 970 (C.D. Cal. 2005) ("[T]he

11

ability to work sporadically or part time is an insufficient ground on which to deny benefits under a 'total disability' policy."). Indeed, even actual attempts to return to work, over a two-year period, do not render a person less than totally disabled. Wright v. Prudential Ins. Co. of Am., 27 Cal. App. 2d 195, 216 (1938); Zambito v. Nw. Mut. Life Ins. Co., 85 F. App'x 625, 627 (9th Cir. 2004). Thus, the question of when an insured party crosses the line from "sporadic" employability to being able to carry on an "occupation" in a reasonably continuous way, even if only part time, is a question of fact that will usually be submitted to the jury. Wright, 27 Cal. App. 2d at 209 (quoting Prudential Ins. Co. of Am. v. S., 179 Ga. 653 (1934)).

    The FAC sometimes directly alleges Plaintiff's symptoms or her inability to work and sometimes merely alleges statements from doctors. But taking the allegations in the light most favorable to Plaintiff and accepting her allegations as true, the Court finds that Plaintiff alleges ongoing pain, swelling, and an inability to sit for long periods, "handle stressful situations," or do repetitive manual tasks. (FAC, ¶ 21.) She alleges she is generally inactive due to her illnesses and that she needs physical therapy. (Id. at ¶¶ 10, 15.) She also alleges that she requires "sedating" medications, which leave her fatigued, and that she suffers from depression. (Id. at ¶ 12, 18.) Plaintiff alleges alleges that "her current limitations [do] not allow her to work." (Id. at ¶ 21.) On the other hand, she also alleges that doctors have said that "fatigue" could be a "limiting factor" preventing her from taking full-time work, that she cannot return to nursing

or patient care, but that she might be able to do "light duty work." (Id. at ¶¶ 12, 15.)

The parties spend a good deal of their briefs on this last phrase, attempting to divine from it a determinative answer to whether there has been a breach of contract. Plaintiff, relying on a case under the Fair Employment and Housing Act, attempts to distinguish between "light duty," which she describes as "positions . . . created for the purpose of accommodating a disabled employee," and "light occupations," defined under the Social Security regulations as jobs requiring frequent walking or standing with intermittent sitting. (Opp'n at 6 & n.5.) Defendant, on the other hand, cites a long line of federal authority, including many cases decided under the federal ERISA statute, stating that a claimant who can work part time is not totally precluded from working "any occupation." (Reply at 11.)

Both lines of reasoning are red herrings. Nothing in the Erreca line of cases speaks of "light duty" or a "light occupation." And ERISA cases are irrelevant to California insurance law – numerous federal courts have held that ERISA specifically preempts California's definition of "total disability" under Erreca. Brady v. United of Omaha Life Ins. Co., 902 F. Supp. 2d 1274, 1282-83 (N.D. Cal. 2012). This case is not brought under ERISA, and Defendant has not argued that ERISA applies to this policy.[3]

---

[3] Insurance plans provided by government agencies to their employees are exempt from ERISA. 29 U.S.C. §§ 1002(32), 1003(b)(1).

13

Rather, the correct standard is the one discussed above. On that standard, taking Plaintiff's allegations as true and taking all inferences in her favor, breach is adequately pled. Her symptoms as alleged, and the allegations as to their impact on her ability to work, support an inference that she either cannot work at all or can only work "سporadically," rather than "with reasonable continuity" in an occupation appropriate to her "station" and "capacity."[4] Erreca, 19 Cal. 2d at 395. That is all that is needed to support her claim for breach of contract. Plaintiff's breach claim therefore survives.

**C.  Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing by, essentially, selectively and dishonestly reading the record of physician statements in Plaintiff's claim file in order to come to the conclusion that she was not totally disabled. (FAC, ¶ 26.) Defendant, however, argues that Plaintiff cannot make out a claim for breach of the covenant, because there was a genuine dispute as to coverage. (Mot. Dismiss at 14-15.)

Under California law, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 371 (1992). "The covenant . . .

---

[4] At oral argument, Plaintiff's counsel suggested that Plaintiff specifically could not work at the alternative occupations identified by Defendant because those jobs require mental acuity, and Plaintiff's mental functioning is diminished by both her depression and the sedating effect of her medication. Although the point was not directly argued in the papers, the allegation of a sedating effect of Plaintiff's medication, at the very least, supports an inference that she may not be able to work at occupations for which she is trained and suited, apart from her physical limitations or any question of full-time versus part-time.

14

finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." Id. at 372.

In this case, Defendant was invested under the policy with the power to determine eligibility for benefits, and so it was under a duty to exercise that power in good faith – i.e., to make a reasonable determination. In re C.M. Meiers Co., Inc., 527 B.R. 388, 409 (Bankr. C.D. Cal. 2015) (an insurer breaches covenant if its investigation of an insured's claim is unreasonable).

Here, Plaintiff alleges that Defendant failed to consider the opinion of the first physician it hired, hired another physician "predisposed" to make findings in Defendant's interest, conducted a biased and selective review of the record, and "mischaracterized" the opinions of her prior physicians. (FAC, ¶ 26.) If true, those allegations would suffice to state a claim for bad faith investigation.

Defendant argues that its determination of benefits, even if objectively in breach of contract, was reasonable, because there was a "genuine dispute" as to Plaintiff's level of disability. (Mot. Dismiss at 14 (citing, inter alia, Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723 (2007)).) Defendant argues that even on Plaintiff's pleadings, the record shows that it made its determination of coverage on "substantial evidence," because it relied on several expert opinions. (Mot. Dismiss at 15.) But if, as Plaintiff alleges, those opinions were biased or based on incomplete or mischaracterized evidence, the investigation could still be unreasonable. A full factual record may clarify whether those allegations are true and whether the investigation was

15

reasonable, which is why the "genuine issue" doctrine is generally applied at the summary judgment stage. <u>Wilson</u>, 42 Cal. 4th at 724.

**D.  Punitive Damages**

Punitive damages are not available for breach of contract, but may be available for breach of the covenant of good faith and fair dealing, which is essentially a tort claim, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). In insurance cases, the evidence needed to show "oppression" is the same as the evidence needed to show bad faith. <u>Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc.</u>, 78 Cal. App. 4th 847, 890 (2000). But the conduct involved must be of a different "dimension" than that which would be enough to make out a "marginally sufficient" case for bad faith. <u>Id.</u> at 909-10.

Plaintiff alleges serious misconduct in Defendant's investigation, as noted above.[5] The degree or "dimension" of that misconduct (if any) is, inherently, a factual question that, like the claim of bad faith, is best resolved on a complete factual record.

**E.  Treble Damages**

Plaintiff seeks treble punitive damages under Cal. Civ. Code § 3345, which allows for such damages in cases involving "unfair or deceptive acts or practices" against senior citizens and the

---

[5] Defendant argues that punitive damages against a corporate entity are only available if on officer, director, or managing agent of the entity "authorized or ratified the wrongful conduct." Cal. Civ. Code § 3294(b). However, an "unwillingness to reconsider a denial when presented with evidence of factual errors" supports an inference that the corporation authorized or ratified the wrongful conduct. <u>Shade Foods</u>, 78 Cal. App. 4th at 880.

16

disabled, "[w]henever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter." Numerous cases have held that treble damages are available when a senior citizen or disabled person sues an insurer and seeks punitive damages under Cal. Civ. Code § 3294 – and, indeed, that § 3345 was enacted specifically to enable treble damages when punitive damages were authorized under § 3294. Ross v. Pioneer Life Ins. Co., 545 F. Supp. 2d 1061, 1066-67 (C.D. Cal. 2008) (reviewing the legislative history); Hood v. Hartford Life & Acc. Ins. Co., 567 F. Supp. 2d 1221, 1227-28 (E.D. Cal. 2008); Williams v. Prudential Ins. Co., No. C 08-04170 SI, 2010 WL 431968, at *4 (N.D. Cal. Feb. 2, 2010). The reasoning of these cases remains persuasive.

Defendant argues that these cases are overruled by Clark v. Superior Court, 50 Cal. 4th 605 (2010). (Reply at 24-25.) But the Court can find nothing in Clark that prevents recovery under § 3345 where a disabled plaintiff successfully proves that punitive damages are merited under § 3294 against an insurer who has engaged in unfair practices. In Clark the California Supreme Court held that treble damages were not available in a suit under California's unfair competition law, because that statute provides only for restitution, not damages, and restitution is not punitive in nature. 50 Cal. 4th at 614. Punitive damages under § 3294 obviously *are* punitive in nature, so the limitation announced in Clark is not applicable.[6] At least two post-Clark cases have found

---

[6]However, the holding in Clark does dispose of one of
(continued...)

that § 3345 applies to statutory punitive damages, including one case involving Defendant itself, on causes of action similar to those asserted here. <u>Alberts v. Liberty Life Assurance Co. of Boston</u>, No. C 14-01587 RS, 2014 WL 4099128 at *5 (N.D. Cal. Aug. 19, 2014); <u>Johnston v. Allstate Ins. Co.</u>, No. 13-CV-574-MMA BLM, 2013 WL 2285361, at *4 (S.D. Cal. May 23, 2013).

Defendant also argues that the plain language of the statute excludes the trebling of punitive damages, because the statute does not repeat the cumbersome phrase "the purpose or effect of which is to punish or deter" after every iteration of the words "other remedy." (Reply at 10-11.) This argument borders on the frivolous. The parallel construction of the statute makes it quite plain that the "other remedy" referred to again in the second sentence must be the "other remedy the purpose or effect of which is to punish or deter," because that "other remedy" is tied to "the statute" – i.e., the statute in the first sentence that authorizes the "fine, "civil penalty or other penalty," or "other remedy."

**IV. CONCLUSION**

Defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: June 23, 2015

DEAN D. PREGERSON
United States District Judge

---

[6](...continued)
Defendant's other arguments, that the statute does not mean what it says about "other remedies" because "[a]ll remedies have some punitive or deterrent purpose or effect." (Reply at 10.) That may be true in some larger sociological sense, but <u>Clark</u> makes quite plain that it is not true of, e.g., restitutionary remedies for § 3345 purposes. Thus, "remedy the purpose or effect of which is to *punish* or deter" should be read in an ordinary, common-sense way – that is, to include *punitive* damages authorized by statute.

18